357 P.2d 136

STATE of Arizona, Appellee,

v.

Jimmy A. CROSE, Appellant.

No. 1172.

Supreme Court of Arizona.

Dec. 1, 1960.

**390**

Nebeker & Nebeker, Yuma, for appellant.

Wade Church, Atty. Gen., Bill Helm, Yuma, for appellee.

LESHER, Justice.

This appeal is from a judgment and sentence entered upon a jury verdict finding the defendant guilty of kidnapping, grand theft and aggravated battery.

The defendant was without means to employ an attorney. At his arraignment, the court appointed to represent the defendant his present counsel, who have conscientiously and ably served him through the trial and this appeal. Among his pleas to the charge was the plea of not guilty by reason of insanity. Prior to his trial defendant moved the court for an order appointing two qualified psychiatrists to examine him and aid him in the presentation of his defense of insanity. That motion was not made under Rule 250 of the Rules of Criminal Procedure, 17 A.R.S., but was specifically for the purpose of enabling defendant to prepare and present at the trial evidence relating to the question whether he was, under our law, criminally responsible for his acts. The motion was denied.

At the trial, evidence was adduced from expert witnesses to support the conclusions that (1) the defendant was a psychopath, or sociopath, (2) the condition of being a psychopath or sociopath, (they are the same thing) is a mental illness or disease, and (3)

the acts with which defendant was charged were products of that condition. The experts also testified that the defendant at all important times knew right from wrong.

At the conclusion of the evidence, the court instructed the jury on the issue of insanity in the manner and form long approved by this Court, and, in general following the so-called M'Naghten Rule. In testing the defendant's sanity the jury was instructed to consider merely whether he was able to distinguish right from wrong at the time of the alleged offense. This is the test which has been considered and approved by this Court in many cases. See, for example, State v. Coey, 82 Ariz. 133, 309 P.2d 260. The defendant offered, among others, the following instructions on the issue of his sanity, all of which were refused:

"You are instructed that though the accused may have been capable of appreciating the moral character of his act and may have been able to *chose* the right to avoid the wrong, yet he should be absolved from punishment for his act if knowing it was wrong he was prompted to do it by some uncontrollable or irresistible influence or was under some insane delusion that made him *chose* the wrong in preference to the right.

"Assuming defendant's knowledge of the nature and quality of his act, his knowledge that the act was wrong, if, by reason of disease of the mind, defendant had been deprived of or lost the power of his will which would enable him to prevent himself from doing the act, then he cannot be found guilty.

"Here it is contended that although the defendant may have understood what he was doing when he kidnapped Officer Penny, and may have known it was wrong, yet he was impelled by an irresistible impulse to do the acts for which he is on trial.

"If the defendant was suffering from a diseased condition of his mental facilities, which so far destroyed his will, the governing power of the mind, that his actions were not subject to the will, but beyond his control, then in legal contemplation, he was insane and not responsible though he may have understood the nature of those acts, and have been conscious of their wrong.

"The term insanity as used in this defense means such a perverted and deranged condition of the mental and moral facilities as to render a person incapable of distinguishing between right and wrong, and unconscious at the time, of the nature and quality of the act he is committing, or where, though conscious of it, and able to distinguish between right and wrong, yet his will—by which I mean the governing power of his mind—has been otherwise and invol-

untarily so completely destroyed that his actions are not subject to it but are beyond his control.

"If you should find that at the time of the commission of the acts charged the defendant, Jimmy Crose, was suffering from a diseased or defective mental condition and the acts were the product of such abnormality, Jimmy Crose must be found not guilty by reason of insanity."

The defendant makes two basic arguments on appeal: First, that it was prejudicial error to deny his motion to have psychiatric experts appointed to assist in his defense; and second, that the jury was not properly instructed on the test of insanity.

■ Respecting the first issue, defendant contends that the right to have medical experts appointed by the court, at the state's expense, to examine him and assist his defense, is an integral and essential part of his constitutionally-guaranteed right to counsel. He has cited us no authority to support that position, and our own independent investigation has disclosed none. That he has the right to counsel, and the right of private access to his counsel, is not in doubt. Constitution of Arizona, Article 2, Sec. 24, A.R.S.; Rule of Criminal Procedure 163. We know of nothing, however, either by constitution or by statute, requiring the state at its own expense to make available to the defendant,

in addition to counsel, the full paraphernalia of defense. We have no doubt that court-appointed counsel in cases such as this often face grave difficulties in matching, on behalf of their clients, the resources available to the prosecution. It is also certainly true, as a practical matter, that the assistance of experts in advance of trial often lies at the very heart of a successful defense. Nevertheless, the constitutional right to counsel has never been construed to include such assistance. That right is one well known to our law. Its essential character is well understood. Those who sought to protect it by appropriate provision in our State Constitution made their intent and meaning clear. Right to "counsel" means, as it has always meant, the right to the services of an attorney, an officer of the court, appointed by the court to advise and assist the accused. Appellant, in urging that we here broaden the term "counsel" to include expert witnesses, misconstrues the function of this Court. That function in this case is only to interpret the constitutional provision; not to write it or re-write it. He asks us to construe it broadly—but we cannot "construe" it when merely reading it will alone suffice. We have no doubt that those who make the law could appropriately provide impecunious defendants with such assistance as was sought here, were it deemed practicable and in the public interest to do so. They have not done so. They were

under no constitutional compulsion to do so. The denial of the motion was not error.

Counsel for both sides have ably presented to the Court the question whether the jury was properly instructed on the issues of insanity. It is by no means the first time that the problem has been before this Court. State v. Macias, 60 Ariz. 93, 131 P.2d 810. We believe it appropriate, however, to treat with it again here.

It should be noted at the outset that what we are prone to refer to as tests for "Insanity" is not a term capable of consistent definition either in law or in medicine. Its use has resulted in widespread misunderstanding. It has meaning to lawyers which may be, and often is, altogether different from anything which it conveys to doctors. Both in law and in medicine it has different meanings in different contexts. Its inherent ambiguity is demonstrated by the fact that doctors may use it as a synonym for "psychotic", lawyers as shorthand for "non-responsible", yet "psychotic" and "non-responsible" are not only not synonyms but represent altogether different concepts. We suggest, therefore, that the terms "sanity" and "insanity" can usefully be abandoned in discussing the problem now before the Court.

Whenever the mental condition of a defendant is in issue, two basic questions are presented. One is whether he is afflicted with a mental illness or disease which acted to produce the conduct with which he is charged. This is entirely a medical, psychiatric question, in which the law has only incidental interest. It is answerable only by medical experts in the application of medical standards. The other, a fundamentally different and wholly legal question, is whether the defendant is to be charged with criminal responsibility for his conduct. Medical considerations play a part—but only a part—in its answer.

What the appellant now urges—and what others, especially in the medical profession, have increasingly urged—is that we now treat the two questions as one, that we answer the second solely and entirely by reference to the answer which medicine has provided to the first.

We take this opportunity to point out that we know perfectly well that the "right-wrong" test—the so-called M'Naghten Rule—is not in any sense a medical test, for "sanity" or anything else. Further, we are not wholly unaware of the strides that medical science has taken toward the recognition, classification and cure of mental disease. The development of the concept of the psychopath, or sociopath, is not unfamiliar to us. That these people are now recognized to be ill, or at least abnormal, in the truest medical sense cannot be doubted. That their conduct presents us with a medical and legal problem of staggering proportions is well known. That the conduct

stems from the condition which afflicts them seems undeniable.

The argument premised upon these facts proceeds like this: It is unjust to punish those who by virtue of a mental disease or defect are unable to control their acts; since the promulgation of the M'Naghten Rules, in psychiatry's infancy, medical science has made great progress in recognizing mental disease; that progress has rendered the M'Naghten Rules archaic and their application unjust, since medicine now recognizes as mentally defective—"ill"—certain individuals, e. g., sociopaths, who are admittedly able to tell right from wrong and have a complete intellectual understanding of the nature and consequences of their actions; therefore, the M'Naghten Rules ought to be abandoned and a new test for criminal responsibility adopted, lest such individuals suffer injustly for conduct over which they have no real control.

In this case, the Court instructed, in substance, in the manner which we have heretofore so often approved. The defendant proposed, and the court rejected, instructions which were in substance those approved by the courts in Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430, and the cases which follow the doctrine therein announced, including State v. White, 58 N.M. 324, 270 P.2d 727. The evidence amply justified the giving of those instructions, if they correctly stated the law. Thus the question whether we should depart from the established rules and adopt the philosophy and policy of the Durham and White cases is again squarely before us.

We decline to do so. We have reached this decision with the full knowledge that it may, and undoubtedly will, result in the application of criminal penalties to persons whom the medical profession would classify as abnormal, or ill, or diseased, and as unable, in consequence, to avoid the commission of their offense. We believe, however, that other considerations than the medical must enter into our decision. The state of society and the science of medicine may some day arrive at a point at which, consistent with the safety of society, a man's medical condition can be equated with his legal responsibility. We are not today persuaded that that time has come. We are under no illusions concerning the M'Naghten Rules. They do not provide a perfect test for criminal responsibility. They may not even provide a good one. They merely provide what we believe to be, in all the circumstances, still the best that is available. We decline to abandon them. State v. Coey, 82 Ariz. 133, 309 P.2d 260; State v. Eisenstein, 72 Ariz. 320, 235 P.2d 1011; State v. Macias, 60 Ariz. 93, 131 P.2d 810.

The judgment is affirmed.

STRUCKMEYER, C. J., and PHELPS, BERNSTEIN and UDALL, JJ., concurring.