409 P.2d 750

The STATE of Arizona and Pima County,
State of Arizona, Petitioners,

v.

The SUPERIOR COURT IN AND FOR the
COUNTY OF PIMA, State of Arizona, and
the Honorable John P. Collins, Judge of
the Superior Court, Division One, In and
For the County of Pima, Respondents.

2 CA–CIV 142.

Court of Appeals of Arizona.

Jan. 12, 1966.

Rehearing Denied Feb. 2, 1966.

Review Denied Feb. 23, 1966.

Norman E. Green, County Atty., Pima County, Tucson, Horton C. Weiss, Deputy County Atty., for petitioners.

Leslie J. Gilbertson, Tucson, for respondents.

Sidney Weissberger, Tucson, for Pima County Bar Ass'n, amicus curiae.

MOLLOY, Judge.

By petition for a writ of certiorari this court has been asked to determine whether the superior court acted within its jurisdiction in awarding compensation to an attorney appointed to defend an indigent defendant in a criminal proceeding where the determination of indigency and appointment of counsel occurred at the time when the attorney withdrew from the defense after a trial had resulted in a mistrial and further; whether the superior court exceeded its jurisdiction in awarding to the attorney an amount of money as compensation for "expenses" incurred in the defense of the indigent, including the services of an expert witness.

At the time of his withdrawal, defendant's counsel requested compensation in the amount of $1,231.96 for various "expenses" incurred: the services of a handwriting expert, a copy of the trial transcript, process server, jury service, long distance telephone calls, and registered mail. In addition, reasonable attorney's fees were sought. The lower court ordered Pima county to pay to Mr. Morgan the sum of $1,531.96 and made the following minute entry:

"It is the finding and opinion of the Court that:

"1. The accused indigent Zora Shaw [defendant] was entitled to 'Effective' Counsel at the expense of the County;

"2. 'Effective' Counsel includes, 'reasonable sums necessarily expended' by Counsel in preparation of trial and during the trial in addition to reasonable compensation allowed to counsel;

"3. Notwithstanding that 'better practice' would suggest prior Court approval of all such proposed expenditures, nevertheless in the instant case a sum not less than $631.96 was and is reasonable as and for 'reasonable sums necessarily expended' as aforesaid;

"4. The sum of $900.00 was and is reasonable as and for legal services rendered, considering the services performed;

"Therefore, the Clerk is hereby directed and ordered to forthwith prepare the customary order for payment of Counsel not inconsistant with the foregoing."

The county now seeks, by certiorari, to prevent payment of the above sums, contending that the awards were in excess of the jurisdiction of the superior court, since the appointment and payment were not authorized by the Constitution or statutes of Arizona. Respondents maintain that the actions of the superior court were within its inherent and/or statutory power, and that such a conclusion is necessary to carry into effect the mandates of the United States Constitution as indicated by recent cases of the United States Supreme Court, especially Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963),

and Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

## APPOINTMENT AND COMPENSATION FOR LEGAL SERVICES

■ There can be no question of the right of indigent defendants to the assistance of counsel in criminal prosecutions. State v. Anderson, 96 Ariz. 123, 392 P.2d 784 (1964); State v. Cuzick, 97 Ariz. 130, 397 P.2d 629 (1964). Concern with the subject matter is widespread and acute, and although the exact limits of such right have not clearly evolved, important indications are available.[1] But we are not presently concerned with the existence or nonexistence of the rights of indigents, it clearly appearing that the defendant below was adequately represented throughout. We begin, therefore, with the assumption that the superior court was not only authorized to appoint counsel to the defendant on a showing of indigency, but was required to do so. Ariz.Const. art. 2, § 24, A.R.S.; 17 A.R.S. Rules of Criminal Procedure, Rule 163; State v. Edwards, 1 Ariz.App. 42, 399 P.2d 176 (1965). Our concern is limited to whether an appointment made after legal services have been performed, to be retroactive to the rendering of such services, satisfies our law pertaining to the payment of attorney's fees at public expense.

■ Rule 163, Arizona Rules of Criminal Procedure, provides:

"Right to counsel on arraignment; duty and privilege of counsel; substi-

---

1. E.g., Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (indigent's right to counsel at trial in State courts); Johnson v. Zerbst, 304 U.S. 458 (1938) (indigent's right to counsel in federal criminal proceedings); Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (indigent's right to counsel in State Courts in capital cases); Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (indigent's right to counsel on first appeal); Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, 58 S.Ct. 1019, 82 L.Ed. 1461 (1956) (indigent's right to transcript on appeal); Eskridge v. Washington State Board of Pardons, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (indigent's right to the same full appellate review as nonindigent who can afford a transcript); Draper v. State of Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963) (indigent's right to sufficiently complete record to provide for full and fair appellate review); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963) (indigent's right to transcript for purpose of appellate review).

tution of counsel; effect of failure to assign

"*Before the defendant is arraigned* on a charge of felony, if he is without counsel, the court shall ask him if he desires the aid of counsel and if he answers in the affirmative, and declares, under oath, that he has no means to employ counsel, the court shall assign counsel to represent him in the action. Counsel so assigned shall serve without cost to the defendant, and shall have free access to the defendant, in private, at all reasonable hours while acting as counsel for him. Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned him by the court. Failure to assign counsel before arraignment shall not affect the validity of any proceeding in the action, *if it appears that the defendant was subsequently represented by counsel whether assigned to him or of his own choosing* and that the defendant was not in fact prejudiced by such failure." (Emphasis added)

A.R.S. § 13–1673 requires that the attorney appointed for an indigent defendant be paid at county expense, and it contains no express limitation as to when the appointment must be made. We believe that Rule 163 clearly provides for the appointment of counsel both before arraignment and subsequent thereto. There is no express limitation that the appointment be made before trial. There is obvious latitude for discretion in the trial court in making appointments under this rule.

█ The rule has for its primary purpose the preservation of the rights of indigent defendants and the implementation of relevant constitutional guarantees, not the safeguarding of attorneys' interests in compensation. The right to compensation, like most other rights, can be waived. If counsel has a client criminally charged who is indigent and if there is no effort made to bring this to the attention of the court but

reliance is placed upon a private agreement for compensation, the necessary elements of waiver may be present. 56 Am.Jur. 113, Waiver § 12; 31 C.J.S. Estoppel § 61, p. 378. We believe that the rule in question requires that the status of indigency exist at the time the services are rendered, and that the mere failure to collect a debt owing for attorney's fees from a defendant who at the time of the incurring of the debt is a non-indigent would in no sense be good grounds for an order by the court under this rule.

█ Here, however, we are not given the benefit of knowing what facts may have prompted the court to exercise its discretion in awarding attorney's fees. The record discloses that there was a hearing before the trial court on May 19, 1965 on the subject of attorney's fees. We have been provided with no transcript of testimony taken at this hearing. In certiorari proceedings, the appellate court must presume that the lower court acted properly. 14 Am.Jur.2d 833, Certiorari § 69; 14 C.J.S. Certiorari § 196, p. 338. For all that is shown by this record, the failure to ask for attorney's fees on the basis of indigency at an earlier date may have been the result of a mistake not reasonably avoidable.

█ The statement is made in petitioners' legal memoranda, and denied in the respondents', that the defendant for whom attorney's fees are ordered was never put under oath to determine indigency. The rule in question requires that the defendant be placed under oath. But, again, the record fails to disclose any violation and we are therefore assuming that proper procedure was followed.

Under the circumstances of this case, we find that the order for attorney's fees was within the power and discretion of the lower court.

## COMPENSATION FOR EXPENSES OF DEFENSE

To support the order for the payment of expenses incurred, the respondents present three contentions: (1) that fundamental

fairness, as required in provisions of both federal and state constitutions, require that the state pay these expenses for an indigent defendant, (2) that A.R.S. § 13–1673 when it requires the county to pay for "services" of counsel rendered to an indigent defendant should be so construed as to include the expenses incurred by counsel which are the subject of this proceeding, and (3) that the trial court had the inherent power to order the payment of the expenses in question.

In an opinion released this date, State of Arizona v. Superior Court, 2 CA–CIV 165, 2 Ariz.App. 458, 409 P.2d 742, this court has given its answer to the first contention insofar as the matter of expert witness fees are concerned.

■ However, in this case we have additional expenses claimed as follows:

TRIAL TRANSCRIPT (James Bouley)

| | | |
|---|---|---|
| Testimony 3/18 and 3/19/65— | $369.25 | |
| 3/23 and 3/24/65— | 297.50 | $666.75 |

| | |
|---|---|
| PROCESS SERVER for service of subpoenas on witnesses— | 72.85 |
| JURY SERVICE— | 15.00 |
| LONG DISTANCE CALLS— | 3.37 |
| REGISTERED MAIL— | 1.60 |

The amount claimed for employment of a handwriting expert was $472.39. The handwriting expert, while he apparently attended the trial, did not testify therein. The total thus claimed was $1,231.96. Of this, the court allowed $631.96, without specifying as to what items were allowed, rejected and/or reduced.

A "trial transcript," which we conceive to be a transcript of testimony provided during the course of a trial to be used for impeachment or for jury argument, we hold to be a part of the "full paraphernalia of defense," [2] which may be reasonably expended by the client with the necessary means, but not to be essential in order for there to be "effective counsel" within the purview of constitutional mandates.

As to the cost of a process server for the services of subpoenas, it should be noted that A.R.S. § 13–1821 requires the clerk of the superior court, upon the application of the defendant, to issue, without charge, as many blank subpoenas as the defendant requires. Under A.R.S. § 13–1822, it is the duty of any peace officer of the county to serve, "without delay," any subpoena delivered to him for service. There is no charge allowed by this statute for such service.

While the employment of private process servers may be a convenience to counsel for various reasons, we hold again that such employment is not necessary for counsel to be effective. Were a peace officer to fail to do his duty to promptly serve subpoenas, this would be ground when presented to the court for a delay of the trial to permit the defendant to bring his witnesses before the court.

■ The charge for jury service we hold falls within the same category. We take judicial knowledge, from years of trial experience, that "jury service" pertains to the supplying by an entrepreneur of background information on individual jurors. Many cases are tried very effectively without such service.

2. From State v. Crose, 88 Ariz. 389, 392, 357 P.2d 136, 138 (1960).

Because of the relatively insignificant amounts of expenditures for long distance calls and registered mail, we decline to consider whether these might be included within what is necessary for there to be "effective counsel."

We have been cited only one case which would hold that the reimbursements sought in this proceeding might be ordered by the court without a statute authorizing same. This is the case of State ex rel. Marshall v. Eighth Judicial District Court, Nev., 396 P.2d 680 (1964). All other decisions presented to us for our consideration arise in one of the twenty states which have by statute provided for the reimbursement to counsel of expenses incurred in connection with the defense of indigent defendants.[3] However, even in this Nevada decision, there was a statute which the appellate court held to specifically authorize the expenditure in question, and hence the portion of the opinion relied upon here is, in a sense, dicta. We refuse to follow it, because we believe State v. Crose, supra note 2, to be controlling.

To keep in perspective the contention of the respondents that the payment of incidental expenses incurred in defense is required by constitutional mandate, it should be remembered that it is well-established that constitutional provisions do not require that an attorney appointed to defend an indigent be compensated for his time. A recent case so holding and containing a thorough review of the history of our law making it the professional duty of a lawyer to defend without compensation when appointed by the court is the case of United States v. Dillon, 346 F.2d 633 (9th Cir. 1965).

This brings us to the second contention of the respondents, to the effect that the statute authorizing the payment of attorney's fees, A.R.S. § 13–1673, contemplates the payment of the expenses under consideration under the label of "services."

A reading of A.R.S. § 13–1673 may be helpful at this point:

"Fee of counsel assigned in criminal proceeding or insanity hearings

"When counsel is appointed by the court and represents the defendant in either a criminal proceeding or insanity hearing, *he shall be paid by the county* in which the court presides, provided that in those matters where a public defender is appointed, no compensation shall be paid by the county. *Compensation for such services rendered to defendant shall be such amount as the court in its discretion deems reasonable, considering the services performed."* (Emphasis added)

A.R.S. § 13–1673, supra, is a modification of an earlier statute (§ 44–905 of the 1939 Code), which not only provided for compensation, but imposed limits to such compensation ($5.00 to $100.00), which limits were recognized and upheld in McDaniels v. State of Arizona, 62 Ariz. 339, 158 P.2d 151 (1945). The limits, however, have been eliminated by A.R.S. § 13–1673 and replaced by a grant of discretionary power to the superior courts to award appointed counsel "reasonable" compensation for "services rendered." The grant of discretion is obvious; it is not, however, without limits: the amount awarded must be reasonable and must be " * * * for such services rendered * * *."

We believe that the "such services" contemplated by the subject statute refers to the assistance of counsel which is required by the Constitution of the United States. In State v. Crose, 88 Ariz. 389, 392, 357 P. 2d 136, 138 (1960), our Supreme Court said:

"Right to 'counsel' means, as it has always meant, the right to the services of an attorney, an officer of the court, appointed by the court to advise and assist the accused."

3. A thorough survey of such statutes is found in 8 St. Louis U. L. J., 1963, p. 15, which indicates that twenty states, not including Arizona, provide for the repayment of expenses incurred by assigned counsel.

In State v. Crose, our Supreme Court did not gainsay " * * * that the assistance of experts in advance of trial often lies at the very heart of a successful defense." (88 Ariz. 389, 392, 357 P.2d 136, 138 (1960) ) There was no attempt to show in the State v. Crose decision that the phychiatric assistance asked for there was not reasonably necessary for the defendant's case, and yet the denial of such assistance at the county's expense was upheld. The expenditures contemplated here seem no more vital to effective defense than the expense considered in Crose. We do not think that our Supreme Court intends that a trial court have the right to grant this type of assistance to one defendant and deny it to another, when it is equally necessary. If A.R.S. § 13–1673 has the broad meaning now contended for it, State v. Crose would have been decided differently.

■ The third contention of the respondents is that the trial court had the inherent power to order the county to pay the expenses in question. Again, other than the decision of State ex rel. Marshall v. Eighth Judicial District Court, supra, we have been cited no authority that there is such "inherent power."

The boards of supervisors of our 14 counties operate under a strict budget law. A.R. S. §§ 42–301 et seq. Through these provisions, and many other acts, our legislature has indicated clear intent to exercise close financial control over the expenditures of local governments. The courts have been vigilant in enforcing budget limitations and have not permitted their avoidance under the "emergency" clause. § 42–308. Hunt v. Norton, 68 Ariz. 1, 198 P.2d 124, 5 A.L.R. 2d 668 (1948).

Lockwood v. Board of Supervisors of Maricopa County, 80 Ariz. 311, 297 P.2d 356 (1956), is a case dealing with the inherent power of the juvenile court to order expenditures in connection with its operation. Inasmuch as our juvenile court is the superior court, acting under special procedures,[4] we

believe the case has some pertinency to the question before us now. In this case our Supreme Court held that:

"* * * the board of supervisors could not under the budget law or any other law so conduct county affairs as to prevent the court's existence and operation as such * * *." 80 Ariz. 311, 316, 297 P.2d 356, 359 (1956)

However, the court went no further than this in upholding the contentions of the appellant as to the inherent powers of the court to order the expenditure of public money. We do not believe that the expenditures here are essential for the court's existence and operation. We are, in effect, back to the original thesis, as to whether these expenditures were necessary for there to be "effective counsel" and on this issue we have already passed. We hold that there was no inherent power in the superior court to order the county to pay the charges under discussion.

■ As pointed out in a decision released on this date in State of Arizona v. Superior Court, 2 CA–CIV 165, 2 Ariz. App. 458, 409 P.2d 742, we believe that this matter of compensation of counsel for indigents is a most appropriate one to be passed upon by the legislature. That the seeking of relief in this direction need not be fruitless is demonstrated by the legislative history of this state pertaining to the payment of attorney's fees. In McDaniels v. State, 62 Ariz. 339, 158 P.2d 151 (1945), our Supreme Court held that the statutory predecessor of A.R.S. § 13–1673 did not contemplate payment of attorney's fees on the appeal of an indigent's case. In so holding, the court said:

"However, counsel will have to look to the Legislature for their remedy and not the courts." 62 Ariz. 339, 351, 158 P.2d 151, 156 (1945)

Since this decision, by ch. 7 of the Laws of 1956, compensation for counsel for indigents in a criminal proceeding on appeal is now provided. A.R.S. § 13–1721.

4. Ariz.Const. art. 6, § 15.

Accordingly, the order below requiring the payment of $900.00 for attorney's fees is affirmed; the order that $631.96 be paid for expenses incurred by counsel is reversed.

KRUCKER, C. J., and HATHAWAY, J., concur.