452 P.2d 112

**The STATE of Arizona, Appellee,**

**v.**

**Jack Lee WILLIAMS, Appellant.**

**No. 1904.**

Supreme Court of Arizona.

In Banc.

March 20, 1969.

Tupper, Skeens & Rapp, by Edw. Crehan Rapp, Phoenix, for appellant.

Gary K. Nelson, Atty. Gen., and Wm. E. Eubank, Chief Asst. Atty. Gen., for appellee.

UDALL, Chief Justice:

Jack Lee Williams, hereinafter defendant, brings this appeal from a judgment of conviction for robbery and attempted robbery.

According to the testimony of Joe Rose, on April 22, 1967 Rose and Lionel Turcotte boarded a gondola car of a Southern Pacific freight train in Los Angeles, California. They got off the train the next morning in Tucson, Arizona where they purchased some food which they ate in the railroad yard. At that point the two men were joined by defendant. Rose, Turcotte and defendant then got on an open-doored box car headed for El Paso, Texas. They all slept for the first couple of hours of the journey. Upon awakening, defendant unsuccessfully attempted to pick a fight with Turcotte. After several minutes passed he approached Turcotte again and began punching him with his fists. Rose persuaded him to stop and then defendant turned on Rose and hit him in the stomach, doubling him over. Defendant took a pocket knife from Rose and held it against Rose's stomach while he robbed him of a sum of money and a few items of personal property. Defendant then pointed to Turcotte and said to Rose, "How about him?" Rose replied that Turcotte didn't have anything. Defendant then went over to Turcotte, knife still in hand, and reached out toward Turcotte's shirt pocket. Turcotte kicked defendant in the leg and defendant began swinging at him with the knife. Rose grabbed at defendant's arm and at some point during the scuffle Turcotte left

the car while it was traveling at a high rate of speed. Defendant pulled his arm away from Rose and Rose jumped from the car.

In the fall from the train Rose suffered a broken leg and multiple lacerations. When he was able to get up he hobbled and crawled back to where Turcotte was lying beside the track. He found Turcotte unconscious but still alive. Rose then attempted to find a highway in order to summon help but instead fell asleep under some bushes. Some two hours after he jumped from the box car he flagged down a westbound freight train and was taken to a hospital.

Turcotte's body was found by the track later that day by deputies from the Cochise County Sheriff's office. The coroner's report indicated that Turcotte's death was caused by the aspiration of blood. The coroner testified that Turcotte had received deep lacerations to the neck and face, minor abrasions to the head, several fractured ribs and general lacerations and bruises to the hands and knees. It was his opinion that death was caused by blood from the neck lacerations leaking into a crushed larynx and voice box and filling the lungs and air passages. The coroner further testified that some of the injuries received by Turcotte were not consistent with jumping or falling from a train.

Authorities from Arizona notified one Sheriff McCarty in Lordsburg, New Mexico that a 6′ 6″, 185 pound, 23 to 25 year old Negro male was on the train who was wanted in connection with a homicide in Arizona. Sheriff McCarty relayed the message to the dispatcher at the Luna County Sheriff's office in Deming, New Mexico, who in turn gave the message to the Luna County Sheriff, Clifford Gray. Sheriff Gray was notified that the railroad depot in Lordsburg had been contacted and that the train would be pulled off on a siding at a certain point. Sheriff Gray and other officers proceeded to the area and located the train. One officer started at one end of the train and one at the other.

As they got close to a box car with both doors open they observed the defendant (a Negro male, 6′ 3″, 172 pounds, 23 years old) getting out of the car. Sheriff Gray handcuffed defendant and frisked him. A pocket knife was found on defendant's person and seized.

The knife taken from defendant at the time of his arrest was admitted into evidence at trial. Defendant's motion to suppress the evidence was denied. He contends that it was error to admit the evidence since it was the product of an unreasonable search and seizure. The search was unreasonable, contends defendant, because it was made pursuant to an unlawful, warrantless arrest.

To be lawful a warrantless arrest must be based upon "probable cause". The arresting officer must have probable cause to believe that a felony has been committed and that the person to be arrested committed it. A.R.S. § 13-1403. Probable cause exists where the arresting officers have reasonably trustworthy information of facts and circumstances which are sufficient in themselves to lead a reasonable man to believe that an offense is being or has been committed and the person to be arrested is committing or did commit it. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; State v. Pederson, 102 Ariz. 60, 424 P.2d 810 (1967); State v. Vaughn, 104 Ariz. 240, 450 P.2d 698 (Feb. 20, 1969).

Information is "reasonably trustworthy" when it is received through official sources. State v. Pederson, supra; People v. Lara, 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202 (1967). The arresting officers obtained their information from police authorities in Lordsburg, New Mexico who, in turn, received the information from authorities in Arizona. Cooperation between authorities of different states, as in the instant case, is essential to effective law enforcement. The arresting officers were directed to arrest a 6′ 6″, 185 pound, 23–25 year old Negro male. They were informed that he was riding a box car on a

certain train and that the train would be pulled off on a siding at a certain point. Defendant is a 6' 3", 172 pound, 23 year old Negro male. He was observed climbing out of a box car on the train which had been pulled off on the siding at the direction of the Lordsburg authorities. It is our conclusion that under those circumstances the arrest was based upon probable cause.

■■■ Defendant contends that the court should have directed a verdict in his favor on the attempted robbery count. He argues that there was no evidence showing an intent on his part to rob Turcotte and no evidence showing an ineffectual act done towards its commission. The argument is without merit. Rose testified that defendant held a knife to his (Rose's) stomach and robbed him. When he completed that act he turned to Turcotte and asked "What about him?", and then went over to Turcotte and reached his hand out to within four inches of Turcotte's pocket. At that point a scuffle ensued culminating in Turcotte's fatal exit from the box car. We believe that the evidence was sufficient to raise an issue of fact which was properly submitted to the jury. The trial court is not required to direct a verdict when there is substantial evidence that the defendant committed the crime charged. State v. Acosta, 101 Ariz. 127, 416 P.2d 560 (1966).

At the end of the state's case defendant moved for a directed verdict on the charge of murder. The court denied the motion and the defense proceeded to call its witnesses. When defendant rested he moved again for a directed verdict on the murder count and the court granted the motion. Defendant now raises the argument that the court erred in failing to direct the verdict as to murder after the state rested. He contends that the three witnesses called on his behalf in no way detracted from the state's case, thus the court considered the same evidence when it denied defendant's motion in the first instance as when it granted it in the second. Counsel then makes the following argument in his brief:

"Appellant and his attorney were faced with the following propositions when it came time to present their case in chief:

"1. Appellant was charged with the commission of a crime for which he could get death in the gas chamber;

"2. Further, Appellant had a prior felony conviction, which not only could be used against him if he took the stand for impeachment purposes, but also had been alleged under the Habitual Criminal Act and therefor was a crime in itself.

"It is conceivable that had the Court directed a verdict in favor of the Appellant at the end of his case, as it should have done, the Appellant could have taken the stand in his own behalf, and attempted to extricate himself from the other charges of (at least) robbery and attempted robbery, rather than risk a severe ·cross-examination and possibly wind up being found guilty and sentenced to death for felony murder.

"Therefor, the Court erred in failing to direct a verdict in favor of the Appellant at the end of the State's case, and by so doing, prejudiced Appellant's defense of these charges."

■■ We have reviewed the record and are of the opinion that the state offered substantial evidence to support the murder charge. The evidence indicates that defendant attempted to rob Turcotte and when Turcotte resisted defendant began swinging at him with a knife. Turcotte somehow fell, jumped, or was pushed from the box car while it was traveling at a high rate of speed. The coroner testified that some of his injuries were not the kind which would be caused by such a fall. In light of the evidence the court properly denied defendant's motion for a directed verdict after the state rested. Fortunately for defendant the court was impressed with something in defendant's case which caused it to reverse its ruling.

The state's exhibit #5, the "prisoner's jail record," was admitted into evidence, over defendant's objection, for the purpose

of showing that defendant had in his possession, when arrested, the amount of money Rose claimed was taken from him. Defendant contends that a proper foundation for admission of the evidence was not laid. The jail record was prepared at the time of defendant's incarceration in the Luna County jail at Deming, New Mexico by the jailer on duty. The record was identified by the Luna County Sheriff. Defendant objected to the admission of the record on the ground that the jailer was the custodian and not the sheriff.

█ The evidence was admitted under Rule 44(q), Arizona Rules of Civil Procedure, 16 A.R.S. which provides:

"2. Any record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or *other qualified witness* testifies to its identity and the mode of its preparation, * * *." (Emphasis supplied)

Assuming, for sake of argument, that the sheriff was not the custodian of the record in question he was certainly qualified to identify it. The court properly admitted the evidence.

For the above reasons the judgment of the lower court is affirmed.

LOCKWOOD, V. C. J., and STRUCK-MEYER, McFARLAND and HAYS, JJ., concur.