520 P.2d 301

**STATE of Arizona, Appellee,**

v.

**Robert Y. EVERETT, Appellant.**

**No. 2400–2.**

Supreme Court of Arizona,
En Banc.

March 21, 1974.

Rehearing Denied April 23, 1974.

**430**

Gary K. Nelson, Atty. Gen., Phoenix by Howard L. Fell, Asst. Atty. Gen., Tucson, for appellee.

W. Edward Morgan, Tucson, for appellant.

HAYS, Chief Justice.

Appellant appeals from his conviction of the crime of first degree murder and the life sentence imposed therein. The facts necessary for the determination of this appeal are as follows:

On April 30, 1965, a Clarence Ready was murdered at his place of work during the commission of either a burglary or a robbery. Appellant, who had worked at the station prior to the murder, was identified as being at the station and helping the victim on the night of the murder. The following day appellant left the state and went to Springfield, Missouri, where his parents lived.

In mid-June, 1965, a weapon was discovered near the scene of the crime. The weapon was identified as having been seen in appellant's possession prior to the murder, and subsequent ballistics tests indicated that this was the same weapon used in the murder.

On June 16, 1965, a criminal complaint charging appellant with the murder was filed in court, and later on the same day an officer at the Tucson Police Department obtained a warrant for appellant's arrest. In the early morning of June 17, 1965, a Tucson police officer called the Springfield, Missouri, police department and informed them that he had a warrant for appellant's arrest on the charge of murder.

Shortly after receipt of the call, four Springfield police officers proceeded to the home of appellant's parents. At this point, the police did not know what appellant looked like. Two officers went to the back of the house and two went to the front. Before reaching the front door they encountered a young man who was leaving. One officer asked this person where appellant could be found and was told that he was not there. At the same time, the two other officers were talking to the other occupants of the house. They indicated that the person about to leave was appellant.

Appellant was arrested, handcuffed and informed that he did not have to say anything and that he had a right to a lawyer.

The Tucson police were informed that appellant had been arrested, and on June 18, 1965, a Tucson officer arrived in Springfield, Missouri, to interrogate the appellant. The first interrogation session began around 7:00 A.M. (June 18) and lasted approximately two hours. Appellant was returned to his cell, but within an hour was brought back for further questioning. At this session, appellant's parents were present. His stepfather told appellant that he should return to Tucson to straighten out the trouble he was in. Appellant began to cry and the Tucson officer isolated appellant, advised him of his rights, and continued to further interrogate him. It was during this interrogation that appellant made a full confession to the charges. Following this, appellant was taken, for the first time, before a magistrate in order to sign extradition papers.

After returning to Tucson, appellant obtained counsel for the first time on June 29, 1965, twelve days after his arrest. This was also the first time that appellant had been brought before any court except for the short extradition proceeding in Missouri.

At trial, the court held a hearing, out of the jury's presence, on the voluntariness of the confession. The trial court found the confession voluntary and denied the defense's objections. Counsel sought to raise the defense of insanity. In support of this defense, counsel made an offer of proof to the court as to appellant's insanity, based

upon the tests and testimony of a clinical psychologist and a psychiatrist. The testimony of each witness was treated as a separate offer of proof and was rejected by the court. The jury returned a verdict of guilty to the charge of first degree murder and appellant was sentenced by the court on February 4, 1966. Some six years thereafter, this court granted appellant's motion for delayed appeal.

In this appeal, appellant seeks to attack his arrest, the confession, and the rejection of his offer of proof on the insanity question. For the reasons set forth below, we affirm the judgment of conviction.

Appellant first seeks to attack the validity of his arrest in Missouri. Here, appellant argues that the arresting officer only knew of the arrest warrant from Pima County; that he had no knowledge of the facts and circumstances of the case, the grounds upon which the Arizona court issued the warrant; that he had no description of appellant; nor that he ever saw the warrant. Appellant concludes that the Missouri officer did not have a valid arrest warrant nor probable cause to make a warrantless arrest, thus effecting a violation of the Fourth Amendment to the United States Constitution.

The general rule of law in this situation is that a warrant of arrest issued in one state can not be executed outside the boundary of the issuing state. *See* 5 Am.Jur.2d Arrest § 20. This rule is relaxed by the holding that where an officer of the nonissuing state has knowledge of the warrant, probable cause exists for the arrest in that state. State v. Williams, 104 Ariz. 319, 321, 452 P.2d 112 (1969), State v. Richards, 110 Ariz. 290, 518 P.2d 113 (1974). Appellant argues that in this situation the arresting officer must have more than mere knowledge of the warrant in order to make the arrest valid and relies upon State v. Williams, *supra*, and State v. Pederson, 102 Ariz. 60, 424 P.2d 810 (1967), cert. denied, 389 U.S. 867, 88 S.Ct. 138, 19 L.Ed.2d 142 (1967). In *Williams, supra*, the defendant was arrested in Dem-

ing, New Mexico, by officers of that county who had been notified by the sheriff of Lordsburg, New Mexico. The Lordsburg sheriff had received his information from authorities in Arizona. The information was rather detailed and consisted of a description of the suspect, height, weight, age, etc.; that he was riding in a boxcar on a particular train which would be pulled off onto a siding at a particular point. *Pederson, supra*, presents a similar situation in which a defendant was arrested in another state for a crime committed in Arizona. Again, the information received by the arresting officers was detailed. The instant case differs from both *Williams* and *Pederson* in the lack of information that the arresting officer possessed other than knowledge of the arrest warrant. Even with these facts, we still do not find the arrest wanting in probable cause. In the first instance, the arresting officer must have "reasonably trustworthy" information of facts which by itself is sufficient for a reasonable person to conclude that a crime is or has been committed and that the person to be seized is committing or has committed the crime. State v. Williams, 104 Ariz. 319, 452 P.2d 112 (1969). "Information is 'reasonably trustworthy' when it is received through official sources." *Williams, supra*, at 321, 452 P.2d at 114. It is the added factor of appellant's evasive actions when approached at his parents' home by the officer that further justify the officer's actions. In People v. Webb, 66 Cal.2d 107, 56 Cal.Rptr. 902, 424 P.2d 342 (1967), the California Supreme Court upheld an arrest where the officers had received information via police teletype that a warrant was outstanding for the defendant's arrest, even though the officers did not have the warrant in their possession. The court concluded "[i]n the present case, moreover, such reasonable cause was bolstered by defendant's furtive and suspicious conduct when first approached by Officer Alve . . ." 56 Cal.Rptr. at 906, 424 P.2d at 346.

In the instant case, the Missouri officer had received reasonably trustworthy infor-

mation from an Arizona police officer and appellant's furtive and evasive conduct when questioned buttressed the reasonable cause upon which he had acted. As we stated in State v. Pederson, *supra:*

> "We are not aware of any constitutional principle which requires an arresting officer to personally verify every bit of information which he possesses, in order to have probable cause for a warrantless arrest." 102 Ariz. at 65, 424 P. 2d at 815.

We therefore find no defect of a constitutional nature that would mark this arrest as illegal or wanting in probable cause.

We turn now to appellant's second issue: that appellant's confession was not voluntary and therefore violates the due process clause of the Fourteenth Amendment of the United States Constitution. Here, appellant's argument is twofold.

First, appellant attacks the delay in bringing him before a magistrate. Appellant was arrested on June 17, 1965, gave his confession on June 18, appeared before a magistrate in Missouri for extradition proceedings, and on June 29, 1965, appeared before a magistrate in Arizona—a full twelve days after his arrest. At the outset, we refer to State v. Sheffield, 97 Ariz. 61, 396 P.2d 828 (1964), in which we held that a delay in bringing an accused before a magistrate did not, ipso facto, render a confession inadmissible where the confession took place shortly after the arrest and the delay occurred thereafter. This holding is applicable to the case at bar. The appellant confessed to the crime less than thirty-six hours after his arrest. The delay in bringing him before a magistrate took place after the confession. Having dismissed the first prong of appellant's argument, we turn to a consideration of the circumstances of appellant's confession.

The Tucson police officer who flew to Missouri went there for the purpose of interrogating appellant. He first saw the appellant on June 18, 1965, at approximately 7:00 A.M. The officer informed appellant of his rights and the session lasted about two hours. Appellant was returned to his cell while the officers went to see the person alleged to be appellant's wife. This lasted about an hour when the officers returned to the jail and had appellant brought to the interrogation room for a second session. Present at this session were a few officers and appellant's stepfather. The stepfather told appellant that he, the appellant, should return to Tucson and straighten out the trouble he was in. Appellant began to cry and was then taken into another room, informed of his rights while still crying, and then interrogated. Shortly thereafter, he gave a full confession. At the start of each interrogation session, appellant was informed of his rights. He was not advised that in a capital case at that time an Arizona court would appoint counsel for him. When given his rights, appellant remained silent, though in one instance he was crying. At trial, the Tucson officer who interrogated appellant testified to the following:

> "Q. When you advised Mr. Everett of the right to counsel and the right to remain silent, did you give him a few moments to think this over before you proceeded to question him?
>
> "A. What do you mean by a few moments?
>
> "Q. Five minutes, ten minutes.
>
> "A. I didn't give him five or ten minutes. He had . . .
>
> "Q. Less?
>
> "A. Yes. I would say less than that." CRT pp 573–74.

Appellant refers the court to two cases of primary importance. First is Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). There, the defendant was interrogated for eight straight hours prior to confessing even though he repeatedly asked to call his lawyer. An added factor in *Spano* was the use of defendant's childhood friend who was also a police of-

ficer. This officer and friend played upon defendant's sympathy and their friendship in order to help induce a confession. Clearly, there are marked differences between *Spano, supra,* and the case at bar. While the appellant was questioned for about five hours, there was a lapse of time between two of the three sessions. Appellant made no request for an attorney. Finally, there is no indication that the appearance of appellant's stepfather and mother was to play on appellant's sympathies and their relationship.

The second major case relied upon by appellant is Haynes v. Washington, 373 U. S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). In *Haynes,* the defendant was questioned for sixteen hours straight, was told that he could not call his wife or an attorney until he cooperated with the police. Again, the facts of *Haynes, supra,* are markedly different from those of the instant case. We again note that appellant was repeatedly informed of his rights. Based upon the totality of the circumstances, "[t]he question in each case is whether the defendant's will was overborne at the time he confessed." (citation omitted). 83 S.Ct. 1343.

It is to be noted that we are not here dealing with the more restrictive litany of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), since appellant was tried prior to June 13, 1966. *See* Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

The final issue raised by appellant is that the trial court erred in rejecting appellant's offer of proof on the issue of insanity and that said rejection deprived appellant of his only defense, thus constituting a violation of the Fourteenth Amendment to the United States Constitution. We find this contention unpersuasive.

Dr. Diers, a psychologist, testified that appellant intellectually knew the difference between right and wrong, but did not have the same capacity on an emotional level. Dr. Tuchler, a psychiatrist, agreed that appellant intellectually knew the difference between right and wrong, but did not on an emotional basis. Dr. Tuchler also testified that appellant showed an antisocial, psychopathic/sociopathic personality. Appellant argues that in State v. Crose, 88 Ariz. 389, 357 P.2d 136 (1960), similar testimony was introduced at trial and the issue of insanity submitted to the jury.

"At the trial evidence was adduced from expert witnesses to support the conclusions that (1) the defendant was a psychopath or sociopath, (2) the condition of being a psychopath or sociopath (they are the same thing) is a mental illness or disease, and (3) the acts with which defendant was charged were products of that condition. The experts also testified that the defendant at all important times knew right from wrong." 88 Ariz. 390–391, 357 P.2d 137.

In the instant case, appellant's experts testified that appellant was a psychopath or sociopath, that such a condition was a mental disease and that appellant knew right from wrong only on an intellectual level. Appellant concludes that the testimony in the case at bar in *Crose, supra,* is almost parallel. Therefore, to have rejected this testimony deprived appellant of his only defense and constitutes fundamental error.

In State v. Schantz, 98 Ariz. 200, 403 P. 2d 521 (1965), we held that one is relieved of criminal responsibility under the M'Naghten Rule only if there are defects of the perceptive and cognitive mental processes. The M'Naghten Rule does not concern itself with the emotional state of a defendant, and in the instant case the appellant knew on a cognitive intellectual level the nature of his acts. Evidence of being a sociopath is not admissible under the M'Naghten Rule to assert an insanity defense. Although in *Crose, supra,* evidence was introduced that the defendant was a psychopath or sociopath, the court's instructions under the M'Naghten Rule

**434**

were approved. There is no conflict between the law in *Crose, supra, Schantz, supra,* and the law in this case.

Judgment of conviction affirmed.

CAMERON, V. C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.