399 P.2d 660

**The STATE of Arizona, Appellee,**

v.

**Oliver Brindley OWEN, Appellant.**

No. 1434.

Supreme Court of Arizona.

En Banc.

March 11, 1965.

Robert W. Pickrell, Atty. Gen., Phoenix, Norman E. Green, Pima County Atty., Richard L. McAnally, Deputy County Atty., Tucson, for appellee.

Richard F. Harless, Phoenix, for appellant.

McFARLAND, Justice:

This is an appeal by appellant, hereafter designated as defendant, from an order of the Superior Court of Pima County denying the application of defendant for a transcript of reporter's notes, under provisions of A.R.S. 13–1714, and Rule 361B, 17 A.R.S.

"The expense of a certified copy of the record on appeal or of the reporter's transcript, or both, when appellant files an affidavit that he is without means or wholly unable to pay for such copies, and such affidavit is found true, shall be a charge upon the county in which the appellant was convicted." A.R.S. 13–1714.

"B. If the appellant, at the time of filing the notice of appeal, files an affidavit subscribed and swore to by him that he is without means and wholly unable to pay for a certified copy of the record on appeal or for the reporter's transcript, or both, he shall serve upon the county attorney an executed copy of such affidavit at the same time it is filed with the clerk of the superior court, and thereupon the county attorney may file a written demand that the appellant be examined upon the matters set forth in the affidavit. The appellant shall appear before the court at such time as the court directs for examination by the county attorney and the attorney for appellant as to the ability of appellant to pay for the record or the reporter's transcript, or both. If the court is satisfied that appellant is unable to pay for the record or reporter's transcript, or both, it shall enter an order directing that the record or transcript, or both, be furnished at the expense of the county as

provided by A.R.S. § 13–1714." Rules of Crim.Proced. 361B.

Defendant was convicted on the 3d day of October 1963 on three counts—arson in the first degree, arson with intent to defraud insurer, and conspiracy—and thereafter, on the 13th day of December 1963, defendant filed his notice of appeal. On the same day he filed the following affidavit:

"That he is without means and is wholly unable to pay for the expense of a certified copy of the record on appeal and the reporters transcript in the above entitled matter; and that this Affidavit is made pursuant to Rule 361B of the ARS Rules of Criminal Procedure and Section 13–1714 ARS for the purposes of having said record on appeal and reporters transcript be paid for by Pima County, Arizona wherein an appeal has been made to the Supreme Court of the State of Arizona, from the verdict and sentence herein."

The State of Arizona filed a request for examination of defendant, pursuant to Rule 361B, Arizona Rules of Criminal Procedure, and hearing was held January 3, 1964, pursuant thereto. At the hearing defendant was examined in regard to his ability to pay, and was questioned about money and property which he had had in his possession before the date of the hearing and for a period of time prior thereto, including the source of money which was

put up to pay for his bonds. He testified that relatives had put up both the money to pay for the same and the assets required for security. As to a diamond ring which he had shown a deputy county attorney during trial he testified that he had pawned the ring for $500 and spent the money. In regard to money that he had borrowed at the bank with a co-signer sometime before the trial, he stated that he did not have any of it left, and that he still owed the co-signer about $15,000. He also testified that he had spent all the other money that he received as gifts or loans. In regard to money he had used for trips to California he stated that another friend had lent him some $700 which had been spent. He testified that he had spent $150 for retainer fee and costs in lawsuits. As to his property, he had lived in a trailer owned by his mother-in-law, but did so no longer; he had lost his car in a repossession, and was driving a 1955 Ford owned by his mother. Another item of approximately $3,000 received from insurance companies he testified he had spent to fix a car and for living expenses.

He was examined in regard to carpeting and furniture for the church which he had purchased about a year and a half before the hearing. He testified that the same had not been paid for. In regard to an organ and piano he stated the organ belonged to his mother-in-law, and the piano belonged to his wife, having been purchased some six years before their marriage, and no value was shown.

Defendant repeatedly stated that he had no assets in California, Arizona, or any place. He also stated that he had exhausted his means of borrowing money. For example, in answer to the question, "Do you have friends at this time who will help you?" he answered, "I do not." The court, after taking the matter under advisement, entered the following order:

> "The Court not being satisfied that the defendant-appellant is unable to pay for the record and/or reporter's transcript herein, the Court declines to order that such be prepared at the County's expense."

The state, in its brief, contends that defendant had not shown that his wife was without funds to pay for the cost of appeal in that she is the owner of a piano, the value of which is unknown, and because he had been paid some $3,000 for the loss of an automobile, and had been able to raise money to pay for his bonds, and he should be able to raise money to pay for the cost of the appeal.

In Riley v. State, 49 Ariz. 123, 65 P.2d 32, an appeal was taken from an order of the court denying an application of defendant for payment for the record and transcript of the reporter's notes under an affidavit and after an examination of de-

fendant as to his ability to pay for same. We held:

"It will be seen, therefore, that if a defendant is wholly unable to pay the necessary costs of sending up the record in a criminal appeal, the expense thereof must be borne by the county, but in order to protect the county against the costs of appeals by those who are able to provide in some manner the statutory fees, the final determination of the ultimate fact as to whether the defendant is in truth 'wholly unable to pay therefor' is left to the sound discretion of the trial judge, and it is clear from the language of the statute that every presumption is against the defendant on this point, and the burden is upon him to satisfy the trial judge that he is wholly unable to pay for the costs of the record before the order is made.

"In the present case, the judge has formally declared himself not satisfied with the showing made by the defendant, and unless it appears affirmatively from the record that his action was not based upon a reasonable exercise of discretion, but was arbitrary and capricious in its nature, we are bound by his conclusion upon this point." 49 Ariz. at 128, 65 P.2d at 34.

As we stated in the Riley case, supra, there must be a determination of the ultimate fact as to whether defendant is wholly unable to pay for the record and transcript, and while this falls within the discretion of the court it must be determined from the affidavit and the record as made in the case upon examination or other evidence introduced at that time. The Riley case, supra, went off on the proposition that the court was justified in believing that friends would come to the assistance of defendant. This part of the case we overruled in the case of State v. Vallejos, 87 Ariz. 119, 348 P.2d 554, where we set forth a more liberal ground, following decisions of the United States Supreme Court. We said:

"In the case now before us it is conceded by the defendant that the burden is upon him to prove his indigence. However, he contends he should not also be required to prove affirmatively that his friends and relatives are also impecunious. Since they have no legal obligation to support his appeal, the argument goes, their wealth—or lack of it—is not relevant to the question of whether *he* is 'wholly unable to pay' the necessary costs.

\* \* \* \* \* \*

"The law in regard to the *right* to an appeal from conviction in criminal cases has been profoundly affected by recent pronouncements of the Supreme Court of the United States. See Griffin v. People of State of Illinois, 351 U.S.

12, 76 S.Ct. 585, 100 L.Ed. 891, and Burns v. State of Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209; see also comments on the Griffin decision by retired Justice Qua, of Massachusetts, and others in 25 U. of Chi. Law Rev. 143. One point, at least, is made crystal clear in these decisions, i. e., in criminal cases the availability of the appellate procedure to the individual defendant may not be denied on the basis of discriminatory economic distinctions. For, as stated by Justice Qua in his comments, supra:

> " ' * * * If a state provides for appellate review it cannot lay down a procedure that requires the payment of money which indigent persons may be unable to pay, unless it provides an alternative that affords an adequate and effective review to such persons.' (p. 146)

"The question before us, then, is no longer that which the Court faced in Riley v. State, supra, i. e., whether the statute justified the trial court's exercise of its discretion in denying county funds to pay the transcript costs. The precise question now is whether, under the quasi-constitutional principle newly spelled out in the Griffin and Burns cases, the court below was correct in conditioning defendant's right to the county's payment of the transcript cost upon an additional showing of the inability of his friends and relatives to pay the costs.

"In the Griffin and Burns cases, supra, the Supreme Court of the United States has held that the concepts of due process and equal protection of the law, under the Fourteenth Amendment, require that a defendant in a criminal case be allowed access to the appellate courts in spite of his inability to meet the costs which ordinarily attend such an appeal. We hold that the rule set out in Riley v. State supra—insofar as it denies the benefits of A.R.S. § 13–1714 to those whose friends or relatives, though not legally responsible, are able to pay for the appeal—is contrary to the spirit of the new pronouncements by our highest court. To that extent, the Riley decision is overruled." 87 Ariz. at 122, 348 P.2d at 556.

In Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, cited in the Vallejo case, the court in discussing the due process and equal protection question under the Fourteenth Amendment stated:

> "Surely no one would contend that either a State or the Federal Government could constitutionally provide that defendants unable to pay court costs in advance should be denied the right to plead not guilty or to defend them-

selves in court. Such a law would make the constitutional promise of a fair trial a worthless thing. Notice, the right to be heard, and the right to counsel would under such circumstances be meaningless promises to the poor. In criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color. Plainly the ability to pay costs in advance bears no rational relationship to a defendant's guilt or innocence and could not be used as an excuse to deprive a defendant of a fair trial." 76 S.Ct. at 590, 100 L.Ed. at 898.

The question in the instant case, as we pointed out in both the Riley and the Vallejo cases, supra, is whether the court properly exercised its discretion in refusing to order the record and transcript paid for by the county. The final determination of the ultimate facts must be based on the affidavit and the testimony produced at the hearing on the affidavit. The court, in taking the matter under advisement, stated:

"I am going to take it under advisement and give it a little bit of thinking at this time. The circumstance is a little difficult for me, at least, to get to the truth of this. Mr. Owen is the only witness here and as far as I am concerned he has not told the truth always in this Courtroom."

While the court probably did not believe defendant had told the whole truth, based partly upon observation of him during the trial, the affidavit and testimony stand uncontradicted. While defendant had handled considerable money and had owned property, the same, according to his testimony, had been disposed of and the money had been spent—at least none was uncovered during the hearing. Where an affidavit is filed, and hearing held, unless assets or means with which to purchase a record and the transcript other than by borrowing money from friends are shown, then defendant has made out a prima facie case, and it is the duty of the court, in its discretion, to order the payment thereof by the county.

The order of the lower court is set aside, with the directions that the record and transcript of testimony be furnished at the expense of Pima County.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and BERNSTEIN, JJ., concurring.