503 P.2d 369

**STATE of Arizona, Appellee,**

v.

**Donald F. REYNOLDS, Appellant.**

**No. 2219.**

Supreme Court of Arizona,
In Banc.

Nov. 21, 1972.

Rehearing Denied Dec. 19, 1972.

**542**

Gary K. Nelson, Atty. Gen., Paul J. Prato, Asst. Atty. Gen., Phoenix, for appellee.

Otto H. Linsenmeyer, Frank E. Dickey, Jr., Phoenix, for appellant.

LOCKWOOD, Justice:

Defendant was charged with grand theft of a camera. The first trial ended in a mistrial. His conviction following the second trial was appealed and reversed by the Court of Appeals. This is an appeal from the third trial which resulted in a conviction and sentence to a term of not less than six nor more than eight years in the state prison.

The essential facts are that on May 10, 1967 at approximately 1:30 P.M. Carol Harris left her apartment and returned at approximately 3:30 the same day. During that two hour period of time her camera and various other items were stolen from her apartment.

On the same day at 12:15 P.M. Officer James Chilson and Detective Dale Samuels arrived at defendant's home with a warrant to search his home and car. After searching the home they waited for defendant to return home. At 2:15 P.M. the officers observed him driving in front of the house and into the alley behind the house where he parked. The officers identified themselves and asked defendant if they could talk to him. The defendant consented and the officers, accompanied by the defendant, went into the house where defendant was read his Miranda rights and questioned. Upon looking into defendant's car the officers observed a camera, which was later identified as the one stolen from Carol Harris, a pair of gloves, a screw driver and various other items. When the defendant was asked "what he gave for the camera" he said he "gave $25.00." The officers took possession of the items in defendant's car and took defendant into custody.

Defendant testified at trial that he was given the camera and other items by two friends on the afternoon when they were taken, while he was at his mother's house attempting to fix her cooler with the screwdriver, which was found in his car.

Numerous points are raised in this appeal concerning the validity of the search warrant, double jeopardy and circumstances occurring at trial. Some of the issues have been previously disposed of in the prior appeal resolved in the Court of Appeals. State v. Reynolds, 11 Ariz.App. 532, 466 P.2d 405 (1970). It is the law of this state that ordinarily a decision of an appellate court in a prior appeal of the same case establishes the law for an appellate court in a subsequent appeal.

"Generally, the final decision of an intermediate appellate court, when not reviewed or otherwise set aside by an appellate court of higher authority, has the same finality as a decision of the highest court." Tucson Gas & Electric Co. v. Superior Court, 9 Ariz.App. 210, 212, 450 P.2d 722, 724 (1969).

The first appeal of this case to the Court of Appeals resulted in a reversal. We were not given an opportunity to review the Court of Appeal's decision. Nevertheless, we have now reviewed the questions raised and the resolution of the Court of Appeals and are in complete agreement with that decision. Therefore in this appeal we will consider only those questions which have not been previously determined in the Court of Appeals. Questions which will not be considered are those pertaining to the validity of the search warrant and the affidavit for the search warrant and double jeopardy.

## DENIAL OF A FAIR AND IMPARTIAL TRIAL

Defendant argues various instances in which he was allegedly denied the right to a fair and impartial trial.

First, it is asserted that there was no competent evidence to place the defendant at the scene of the crime. More particularly, the state presented evidence in attempt to prove that the screwdriver which was found at defendant's home was the instrument which was used to enter Carol Harris' home and remove the camera. The screwdrivers were speckled with "light mist green" paint. The state's witness testified that the walls just inside the door frame of Harris' apartment were "light mist green" when he examined them a few days after the robbery occurred. Carol Harris, who testified at trial three years after the robbery occurred, stated that the inside of her apartment was a rose beige and had not been painted green since she had been there. The outside of her apartment had recently been repainted and she did not remember the former color of the apartment.

Defendant argues that the state's witness was impeached because Carol Harris, as occupant of the premises was in a better position to know the color of her apartment; presentation of the alleged false testimony of the state's witness therefore denied defendant due process of law. We do not agree. First, Carol Harris' testimony did not necessarily contradict the testimony of the state's witness. When asked whether the paint, which was taken from the inside of her door and admitted as an exhibit at trial, had a green tint, she responded that it did "kind of."

More important, however, even if the testimony could be interpreted as contradictory, the jurors are the triers of fact and they are free to judge the credibility of all the witnesses.

"The jury, not the court, is the fact finding body and it weighs contradictory evidence and inferences, judges witnesses' credibility, and in light of the court's instructions draws the ultimate conclusions as to disputed facts." Udall on Evidence § 3 at 5. "Contradiction is not impeachment." Udall, supra, § 62 at 82.

In addition to this evidence there was other competent evidence to place defendant at the scene of the crime. The defendant was found in possession of the stolen camera and a pair of gloves approximately forty-five minutes after the theft occurred, and the state's witness testified that the screwdriver found in defendant's possession could have been used to open Carol Harris' apartment door. The edge

of the screwdriver measured one-eighth of an inch as did the pry marks on the door of the apartment.

■ It is also argued that the admission of defendant's prior conviction denied him due process of law. Defendant implores this Court to abrogate the rule allowing evidence of a prior conviction for impeachment. No authority is cited for this proposal, and we have reaffirmed the rule of allowing evidence of previous conviction of a felony for purposes of attacking the credibility of a witness. State v. Harris, 73 Ariz. 138, 238 P.2d 957 (1951).

Defendant's next argument is that prohibiting him access to the complete reports of the crimes for which he was being investigated at the time of the crime charged in this case denied him due process. He argues that he "has reason to believe that there may have been" exculpatory evidence in those reports. Reliance is placed on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–1197, 10 L.Ed.2d at 218.

■ We believe that defendant's bald assertion that there "may have been" exculpatory evidence is insufficient to require reversal. State v. Altman, 107 Ariz. 93, 482 P.2d 460 (1971). We are sympathetic with the argument that often knowledge of the exculpatory evidence is impossible without examination of the information in possession of the state. However, the record indicates that the defendant was granted access to all the available reports. Moreover, at the second trial of this case the judge examined the prosecution's file in camera for discovery of exculpatory evidence.

■ Defendant makes two arguments with respect to the admission of statements he made to officers at the time of the investigation at his home. It is contended that they were hearsay and therefore unreliable and that their admission violated the right to effective assistance of counsel, due process, and the privilege against self-incrimination.

Officer Chilson testified that defendant was advised of his constitutional rights before questions were asked. At the second trial of this case a voluntariness hearing was held and defendant's statements were declared voluntarily made. Having been voluntarily made there was no denial of due process in admitting the statements. See State v. O'Dell, 108 Ariz. 53, 492 P.2d 1160 (1972) and State v. Costello, 97 Ariz. 220, 399 P.2d 119 (1965).

■ With respect to the argument on hearsay, a well-recognized exception to the hearsay rule is, statements made by a party to the action whether exculpatory or incriminatory. State v. Vaughn, 104 Ariz. 240, 450 P.2d 698 (1969); State v. Acosta, 103 Ariz. 43, 436 P.2d 592 (1968). The defendant's statements were therefore admissible.

■ Defendant argues that the court erred in denying the motion for a directed verdict. The rule is that a directed verdict should not be granted "if the evidence is of such character that reasonable minds may differ on the inferences to be drawn therefrom * * *." Heth v. Del Webb's Highway Inn, 102 Ariz. 330, 332, 429 P.2d 442, 444 (1967). We are of the opinion that reasonable minds could have differed on the inferences to be drawn here. See also State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969), cert. denied, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970).

■ The defendant argues that a new trial should have been granted for all the same reasons that he argues for reversal in this appeal. A new trial will not be granted on appeal unless it is shown that the trial court abused its discretion in denying the motion for new trial. State v. Turner, 104 Ariz. 469, 455 P.2d 443 (1969). Having ruled against the defendant on all particulars raised in this appeal we find no

abuse of discretion in denying the motion for a new trial.

 Defendant's final due process argument is that the prosecutor conversed with the jurors in an attempt to curry their favor and this denied defendant a fair and impartial trial. The county attorney admitted greeting the jurors in a friendly casual manner but denied making statements pertaining to the trial. He stated:

> "Well, as to point one as to curry favor with the jurors, I strongly deny that, Your Honor, and I know—I can only speak for myself, other than the fact of saying hello, good afternoon, or short statements to that effect, either while passing in the hall, or—there were absolutely no statements made to the jury as to anything to do with the case or having to do with anything whatsoever."

The court is vested with discretion in determining such matters as this, and we fail to see any abuse of discretion here.

### WAS REBUTTAL IMPROPER?

Defendant argues that the extent of the rebuttal offered by the prosecution was improper. Ten witnesses testified for the state in rebuttal. Again, this is a matter of discretion for the trial court. We find no abuse of discretion in this regard.

### INSTRUCTIONS

Defendant first argues that the court's instructions on circumstantial evidence improperly omitted the statement that if two conclusions can reasonably be drawn from the evidence, one of guilt and one of innocence, the one of innocence must be adopted. In State v. Harvill, 106 Ariz. 386, 476 P.2d 841 (1970) we specifically rejected this proposition, holding that there is no distinction in the probative value of direct and circumstantial evidence.

It is further argued that the court improperly refused defendant's instruction number five defining the elements of theft. This definition was properly supplied by other instructions given by the court.

Defendant also challenges as a comment on the evidence the instruction regarding the general evidentiary effect of possession of stolen property. We do not agree. Allen v. State, 26 Ariz. 317, 225 P. 332 (1924).

### AFFIDAVIT OF INDIGENCY

Defendant's final argument is that this Court's order of March 17, 1971 denying his motion to reinstate indigency denied him due process and equal protection because it prohibited a free transcript which would have allegedly enabled him to argue other points in this appeal.

A defendant has the burden of proving his indigency in order to qualify for receipt of a free transcript. State v. Owen, 97 Ariz. 250, 399 P.2d 660 (1965). Defendant made no such showing.

Judgment affirmed.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.