523 P.2d 1308

**John Henry KNAPP, Petitioner,**

**v.**

**The Honorable Charles L. HARDY, Judge of the Superior Court, Maricopa County, Arizona; Moise E. BERGER, County Attorney for the County of Maricopa, State of Arizona, Real Parties In Interest, Respondents.**

No. 11553.

Supreme Court of Arizona, In Banc.

June 24, 1974.

Ross P. Lee, Maricopa County Public Defender by David W. Basham, Deputy Public Defender, Phoenix, for petitioner.

Moise Berger, Maricopa County Atty. by Charles F. Hyder, Deputy Public Defender, Phoenix, for respondents.

CAMERON, Vice Chief Justice.

We granted this petition for special action to review the orders of the Superior Court of Maricopa County which denied defendant association of private counsel with the public defender, and which denied his request for appointment of an expert at State expense. We consider the following questions:

1. Was the defendant an indigent?

2. May privately retained counsel be associated with the public defender as

an additional attorney for an indigent defendant?

3. If so, does the county attorney have standing to object to such association?

4. May the county attorney refuse to negotiate with an attorney "not of record" in a particular criminal case?

5. Must the court appoint an expert witness at State expense?

The facts necessary for a determination of the issues before us are as follows. The defendant Knapp was charged by information with two counts of arson-murder of his two daughters which allegedly occurred on 16 November 1973. At his arraignment Knapp was determined to be indigent, and the public defender's office was appointed to represent him. Mr. David Basham, deputy public defender, was assigned to the case. Subsequently, on 28 December 1973, the defendant's mother, Mrs. Mary Elizabeth Knapp, retained Mr. Charles Diettrich, an attorney in private practice, to assist the public defender. Mr. Diettrich asked for permission to inspect the burned house and was refused permission by the county attorney as he was not counsel of record. On 6 February 1974 the county attorney filed a motion for determination of counsel, urging that the defendant was entitled to representation by either the public defender or private counsel, but not both. At the hearing on the motion Mr. Diettrich testified that the retainer was limited to assisting the public defender, and that for the amount of the retainer he would be unable to handle the entire defense case. He testified as follows:

"THE COURT: We are arguing the question of whether or not Mr. Knapp is an indigent. Apparently there's some question on the nature of your representation of him.

Will you tell us what you have been retained to do?

"MR. DIETTRICH: Basically, I was retained after quite a lengthy discussion with the public defender on the case. Dave Basham, the defendant's —John Knapp's mother, Mrs. Mary Knapp to the effect that she didn't feel that she could afford to hire me to take over the case at that point for full representation of it. So I was hired, in effect, to assist in the trial of the case when it comes to trial. And I took the case and the retainer on that basis."

At the close of the hearing the court ruled that the defendant was still indigent, but that should Mr. Diettrich become attorney of record, the public defender would be relieved from further participation in the case. Thereafter, on 15 April 1974, a motion for association of Mr. Diettrich was filed and the motion was denied.

On 12 April 1974 the defendant also filed a motion for appointment of an arson expert at State expense. In support thereof the defendant argued that a determination of the cause of the fire which led to the deaths of the two victims was essential to his defense, and that the budget of the office of the public defender could not withstand the total cost of an investigator to determine the cause of the fire. The court denied the motion. From said foregoing orders of the court the defendant filed this petition for special action.

WAS THE DEFENDANT INDIGENT?

The county attorney first contends that because defendant has been provided with the assistance of private counsel through funds advanced by his mother, he is no longer indigent within the meaning of the statute and the rules.

The Rules of Criminal Procedure 1973 state as follows:

Rule 6.4 Determination of indigency

"a. Standard. The term 'indigent' as used in these rules means a person who is unable to obtain services of counsel without incurring substantial hardship to himself or to his family."

In a previous opinion of this court we held that it was error for the court to con-

sider financial resources of a convicted defendant's friends or family for the purpose of deciding whether or not the defendant was entitled to free transcripts for his appeal. State v. Vallejos, 87 Ariz. 119, 348 P.2d 554 (1960); State v. Owen, 97 Ariz. 250, 399 P.2d 660 (1965). Similarly, the Comment to Rule 6.4, Rules of Criminal Procedure 1973, reads in part as follows:

"In making a determination whether or not a defendant is indigent, the court should consider such factors as income, source of income, property owned, outstanding obligations, the number and ages of any dependents, and other sources of family income; but it should not consider the fact that a person has been released on bail or the ability of friends or relatives, not legally responsible for him, to obtain services of counsel. * * *"

This Comment not only conforms to our prior case law, Vallejos and Owen, supra, but also to The American Bar Association's Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services:

"6.1 Eligibility
"Counsel should be provided to any person who is financially unable to obtain adequate representation without substantial hardship to himself or his family. Counsel should not be denied to any person merely because his friends or relatives have resources adequate to retain counsel or because he has posted or is capable of posting bond."

The "Commentary" reads:

"b. Resources of Relatives and Friends
"The American Bar Foundation's survey of the practice in American courts found that in determining eligibility

resources of the defendant's parents are usually considered only when he is a minor, and even then some courts recognize that the parents have no legal obligation to provide a lawyer for him. For the most part, resources of the spouse are considered a disqualification only in

community-property states and only if the resources are community property."

■ The mother in the instant case had no legal obligation to provide legal counsel for the defendant, and the determination of indigency must be based on his financial condition and not that of relatives and friends. Of course, this does not mean that once a defendant has been determined to be indigent his status cannot be changed.

Rule 6.4(c) Rules of Criminal Procedure 1973, "Reconsideration," states as follows:

"If a determination of indigency or non-indigency has been made by a person other than a Superior Court judge, in a case triable in the Superior Court, or, if such determination was made by a Superior Court judge but there has been a material change in circumstances, either the person requesting appointment of counsel, the attorney appointed, or the prosecutor may move for reconsideration of the determination by the Superior Court."

■ The county attorney clearly may move for reconsideration of defendant's status as an indigent. Likewise, there is an obligation on the part of the public defender to bring to the court's attention, by way of a motion for reconsideration, those cases wherein there is a change which would indicate that the defendant is no longer indigent. The taxpayers should not be burdened by the defense of a person capable of providing his own counsel.

■ In the instant case we believe the record adequately reflects that the defendant was, and continued to be, an indigent and the trial court did not abuse its discretion in so determining.

## MAY PRIVATE COUNSEL BE ASSOCIATED WITH THE PUBLIC DEFENDER?

It is the contention of the county attorney that private counsel may not, under any circumstances, be associated with the public defender in the defense of a case.

With this conclusion the trial court evidently agreed.

■ A defendant may have more than one attorney, and the public defender's office may assign one or more attorneys to represent a particular defendant depending upon the seriousness of the case and the competency and experience of the attorneys assigned. We have been unable to find anything which prevents the association of private counsel with the public defender's office in the defense of an indigent. It is, of course, not improper for a relative of the defendant to hire people to help and assist, and the fact that the indigent defendant already has the aid of the public defender's office does not limit the help a defendant may receive. We feel that it is preferable to have counsel thus assisting to be associated and made a counsel of record with reciprocal rights and duties under our Rules of Criminal Procedure and subject to the direction of the court as to the particular case in which he is involved.

In a previous case this court indicated that the trial judge should not be too hasty in discharging the public defender when an indigent is asserting a right to obtain the services of private counsel. We stated:

" * * * Finally the court had the defendant take an oath as to his indigency and appointed the Public Defender to represent him. The defendant at this time indicated that he had a wife and three children to support, that he hadn't worked for nine days, and that he owned no property.

"The day before the trial day, an attorney filed a motion for continuance indicating he had just been retained by the defendant. The motion was granted.

"On January 19, 1967, a hearing was had for determination of counsel. The private attorney was permitted to withdraw on the representation that defendant had failed to make the payment agreed upon.

The court then questioned the defendant's good faith in attempting to secure counsel, did not appoint the Public Defender, and ordered him to trial on January 26, 1969.

"We are now of the opinion that in a situation such as we have here the best interests of the administration of justice as well as the protection of the rights of the defendant require that at the time of arraignment permanent counsel be appointed to represent an indigent defendant. If thereafter employed counsel replaces the Public Defender or other appointed counsel, the court should be slow to permit a subsequent withdrawal.

"It is commendable for the courts to have concern for the public purse, and also to be helpful in encouraging defendants to secure counsel of their own choice, but in marginal cases such as this the judicial process is slowed and often the problem of securing counsel can result in various manipulations by a knowledgeable defendant." State v. Allen, 105 Ariz. 267, 268–269, 463 P.2d 65, 66–67 (1969).

■ We feel that the trial court was wrong in its holding denying the right of the retained counsel to associate with the public defender's office in this case.[1]

It is urged that to allow an indigent the benefit of an attorney from the public defender's office as well as counsel retained by a relative or friend is an unwarranted burden upon the taxpayers. It does not necessarily follow, however, that where private counsel is allowed to associate with the public defender that the public is paying more than it is legally and constitutionally obligated to do by State and federal law. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). On the contrary, privately retained counsel can relieve the public defender of both time and money that he might have to spend if he had the sole responsibility of the de-

---

1. But see Rule 6.3(b) of the Rules of Criminal Procedure 1973, concerning the duty of continuing representation.

fense. In the instant case, for example, the retained counsel, at no expense to the public defender's office (and the taxpayer), made a trip to Nebraska to interview the defendant's wife, an expense that the public defender would have had to consider had he been the only attorney in the case.

## STANDING

The defendant contends that the county attorney has no standing to object to the association of additional counsel, and we agree. That the county attorney has standing to object to a determination of indigency there can be no doubt, but once that indigency is determined the county attorney has no standing to object as to who will or will not represent the defendant or be associated as counsel. Not only does this strike at the very heart of the adversary system, but as we have previously stated:

> " * * * for the prosecution to participate in the selection or rejection of its opposing counsel is unseemly if for no other reason than the distasteful impression which could be conveyed." State v. Madrid, 105 Ariz. 534, 535, 468 P.2d 561, 562 (1970).

## MUST THE COUNTY ATTORNEY NEGOTIATE WITH AN ATTORNEY NOT OF RECORD?

Although the county attorney may not participate in the selection of the attorney of record for the defendant, it does not follow that the county attorney must negotiate with attorneys not of record.

Under our Rules of Criminal Procedure the county attorney has certain obligations to the attorney for the defendant just as the attorney of record for the defendant has certain obligations to the county attorney. To allow an attorney not of record in a case to all benefits of the Rules of Criminal Procedure 1973 without any responsibility could lead to chaos. The county attorney may rightfully refuse to negotiate with an attorney who is not officially a counsel of record and therefore not subject to the obligations which these rules impose. Once the attorney is an attorney of record, he may require the county attorney to recognize that fact. Until he does he is outsider to the proceedings.

## APPOINTMENT OF THE EXPERT

The defendant Knapp also challenges the order of the court which denied his motion for appointment of an arson investigator at State expense. He claims that the court has thereby denied him due process, equal protection of the laws, and effective assistance of counsel. With that contention we disagree.

The defendant in his motion for appointment of an expert alleged that a fire expert had been hired by the public defender's office and that expenses of $1,300 had been incurred with an estimated $2,000 for additional investigation. The public defender indicated that the office did not have sufficient funds to pay for the additional estimated expenses. A hearing was held on the motion and the court denied the motion.

In State v. Bowen, 104 Ariz. 138, 449 P.2d 603 (1969), a rape case wherein the defendant asked for an expert to conduct tests on the sperm sample and his blood and saliva which it was concluded could have excluded the defendant as a suspect, we held as follows:

> "It is ably argued that indigent defendants should be afforded expert testimony at State expense. People v. Watson, 36 Ill.2d 228, 221 N.E.2d 645 (1966) (handwriting expert in a forgery case); Ambassador Goldberg, Equality and Governmental Action, James Madison Lecture, copyrighted by New York University School of Law, p. 18 (February 11, 1964); Report of Attorney General's Committee on Poverty and the Administration of Criminal Justice, p. 12 (1963).

> "This Court has never held that an indigent is entitled to experts at State expense, and no Arizona authority is cited to this effect. In State v. Crose, 88 Ariz. 389, 357 P.2d 136 (1960), it was

held that an indigent defendant who had entered a plea of not guilty by reason of insanity was not entitled to have medical experts appointed at State expense to assist him in his defense.

"More recently, the Court of Appeals of this State, Division One, held that A.R. S. § 13–1621.01 requires the court to appoint a psychiatrist prior to the trial, San Miguel v. McCarthy, 8 Ariz.App. 323, 446 P.2d 22 (1968). This holding was the result of an express provision of a statutory enactment by the legislature in 1968. In State v. Superior Court In and For Pima County, 2 Ariz.App. 458, 409 P.2d 742 (1966), (review denied, March 1, 1966), it was held that the rights of an indigent defendant to equal protection of the law and due process of law imposed no duty on the county to pay for the services of a medical doctor who examined the defendant and testified at his trial as an expert concerning chronic alcoholism; and in State v. Superior Court In and For Pima County, 2 Ariz.App. 466, 409 P.2d 750 (1966), (review denied, February 23, 1966), it was held that the superior court had no inherent power to pay expenses incurred in defense of an indigent defendant.

"Until the power of the courts to order payment of defense experts is authorized by appropriate legislation, we cannot judicially legislate to enlarge the scope of the term 'counsel' to encompass expert testimony." 104 Ariz. at 140, 449 P.2d at 605. See also State v. Mojarro Padilla, 107 Ariz. 134, 483 P.2d 549 (1971).

It is true that the same defendant in Bowen, supra, later secured a writ of habeas corpus from the United States District Court, District of Arizona, the court there holding:

"* * * In the Court's view, 'fundamental fairness' is the touchstone, i. e., *whether or not a defendant is entitled to a court-appointed expert depends on the facts and circumstances of the case.* And there can be no doubt that in this case, where tests could have been run which might have excluded petitioner as the guilty party, fundamental fairness was not accorded the petitioner in refusing to appoint an expert. See People v. Bynon, 146 Cal.App.2d 7, 303 P.2d 75 (1956)." Bowen v. Eyman, D.C., 324 F. Supp. 339, 340 (1970). (emphasis added)

We feel, however, that Bowen v. Eyman, supra, is distinguishable from the case at hand, and that our reasoning in State v. Bowen, supra, is still good law under the facts of this case. Here the State will be required to prove that the fire which caused the deaths of the victims was the result of arson. To do so we may assume that the State will have to present expert testimony to that effect. Under Rule 15.1, Rules of Criminal Procedure 1973, 17 A.R.S., the State is required to make available to the defendant any and all information it might have relating to the cause of the fire. What the defendant is really requesting is the appointment of an expert to rebut the State's anticipated evidence. We do not believe that "fundamental fairness" requires the appointment of an expert at State expense at this stage of the proceeding and absent further facts the failure of the court to appoint an expert in this case was not error.

The orders denying association of private counsel with the public defender are hereby set aside; the order denying appointment of an arson investigator is hereby affirmed.

Prayer for relief granted in part; denied in part.

HAYS, C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.

HOLOHAN, Justice (dissenting).

The ruling of the trial court appears to me to be based upon sound law and good public policy; therefore I dissent from the position of the majority and would affirm the decision of the superior court.

Perhaps the majority's difficulty stems from the statement of the question: "Was the defendant an indigent?" The proposition is incomplete in that the real ques-

tion is not only was he indigent but was he unable to obtain counsel or have counsel provided for him. Under the Sixth and Fourteenth Amendments the accused has the right to the assistance of counsel for his defense, and one charged with a crime who is unable to obtain counsel must be furnished counsel by the state. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

In this state an accused who is unable to obtain counsel due to indigency is furnished an appointed attorney or, in counties with a population over 100,000 persons, may be furnished a public defender. In Maricopa County the Board of Supervisors has chosen to establish a public defender system, and, pursuant to A.R.S. § 11–584, the public defender was required to:

"1. Upon order of the court, he shall defend, advise and counsel without expense to the defendant any person who is not financially able to employ counsel and who is charged with the commission of a felony. The public defender shall also defend, advise and counsel such defendants at the preliminary hearing and prosecute all appeals to a higher court which arise from those cases which he is defending."

The superior court appointed the public defender to represent the petitioner, and the public defender has represented him throughout the proceedings, and there is no indication that that officer will not continue to represent him. In fact, the matter presented to this Court clearly indicates that the public defender intends to continue to represent the petitioner in the criminal case in association with private counsel secured by the accused's mother who will be paid the sum of $5,000 for his services.

When the matter of the association of private counsel arose the county attorney sought under Rule 6.4(c) a determination of the status of the defendant. Private counsel had not filed an appearance as required by Rule 6.3(a), and under the circumstances the trial court correctly ruled that the defendant was still indigent, but the trial court ruled that the public defend-

er would continue to represent the defendant until such time as the private attorney became attorney of record; at which time the public defender would be relieved of further participation in the case. The public defender and private counsel, being dissatisfied with the ruling, brought the matter here for review.

The majority seeks to justify their decision on the basis that there is no specific rule against the association of private counsel with the public defender. The impossible contradiction of privately paid counsel and a public defender paid by the taxpayers does not seem to cause the majority any problems. In fact the author of the opinion contends that this situation is not the raid on the taxpayers contended by the county attorney but is indeed a blessing because privately retained counsel "can relieve the public defender of both time and money that he might have to spend if he had the sole responsibility of the defense." The public policy involved in the creation of the public defender's office was to provide counsel for those financially unable to employ counsel. The ruling of the majority will not be a saving to the taxpayers but it will encourage abuse of the public defender system by relatives and others who might normally exert the effort to retain private counsel instead of the public defender. It appears to me that the object and intent of providing counsel to those unable to secure counsel is contorted by this ruling and nothing but mischief can follow.

The ruling of the majority establishes three classes of defendants—those who can employ counsel, the indigent who cannot, and a third class who have both employed counsel and furnished counsel. All are apparently equal before the law, but, though I hesitate to suggest it, some appear more equal than others under the majority's ruling.

Again, contrary to the majority's view, I find that the county attorney had standing to object to the association of private counsel with the public defender. The actions of the county attorney were in no sense an attempt to dictate the selection of

counsel by the accused. Under the 1973 Rules of Criminal Procedure the county attorney had the right to request that the superior court consider whether the accused was an indigent and financially unable to obtain counsel. Rule 6.4(c). Additionally, this Court has stated that the county attorney is a constitutional officer charged with the responsibility of enforcing the public laws. State ex rel. Berger v. Myers, 108 Ariz. 248, 495 P.2d 844 (1972). It was not only the right but the duty of the county attorney to oppose the misuse of a county office such as the public defender. Under A.R.S. § 11–532 the county attorney has the duty to "oppose claims against the county which he deems unjust or illegal." It was the contention of the county attorney that the defendant was able to employ counsel. The trial court found otherwise. When the public defender attempted to associate private counsel the county attorney opposed such association as illegal. In my view not only did the county attorney have standing to advance this objection, but he had the duty to oppose the misuse of a county office and service, and his actions in this case should be commended for his attempt to resist that which he deemed to be illegal or unjust.