759 P.2d 1314

**Robert Douglas SMITH, Petitioner,**

v.

**Samuel A. LEWIS, et al., Respondents.**

**No. CV–87–0186–CQ.**

Supreme Court of Arizona,
En Banc.

July 28, 1988.

---

Harold L. Higgins, Jr., Pima County Public Defender by John F. Palumbo, Michael S. Mussman, interim Public Defender and Dardis & Hippert, P.C. by Frederic J. Dardis, former Public Defender, Tucson, for petitioner.

Robert K. Corbin, by William J. Schafer III, Crane McClennen, Barbara A. Jarrett, Phoenix, for respondents.

Lewis and Roca by John P. Frank, Jose A. Cardenas, Sylvia Karen Bamberger, Phoenix, for amicus curiae American Civil Liberties Union.

Harrison & Lerch by Stephen M. Dichter, Phoenix, for amicus curiae Arizona Attys. for Criminal Justice.

FELDMAN, Vice Chief Justice.

█ The Hon. Richard M. Bilby, Chief Judge of the United States District Court for the District of Arizona, has certified the following question to this court:

> Whether attorneys employed in county public defenders' offices may appear in federal court to represent death row inmates on Petitions for Writ of Habeas Corpus when their organizations will be paid by the federal government under the Criminal Justice Act?

This court has jurisdiction to answer questions of law certified from the United States District Court. Rule 27, Ariz.R.S. Ct., 17A A.R.S.; A.R.S. § 12–1861.

In 1982, a Pima County Superior Court jury convicted Robert Douglas Smith of first degree murder and other felonies. The trial court then sentenced him to death on the first degree murder charge. We affirmed his convictions and sentences in *State v. Smith*, 138 Ariz. 79, 673 P.2d 17 (1983), *cert. denied*, 465 U.S. 1074, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984). Smith then petitioned for post-conviction relief. Rule 32, Ariz.R.Crim.P., 17 A.R.S. The trial court denied relief and this court denied review. Attorneys from the Pima County Public Defender's Office represented Smith throughout the trial, appellate, certiorari and post-conviction proceedings.

Apparently having exhausted all available state remedies, on April 14, 1987 Smith filed a petition for writ of habeas corpus in the United States District Court for the District of Arizona. *See* 28 U.S.C. §§ 2254 and 2255. That court granted Smith's application for a stay of execution and appointed the Pima County Public Defender's Office to represent Smith in the federal habeas corpus action. The Pima County Attorney and the Arizona Attorney General objected to the appointment of the

public defender.[1] The judge promptly certified the question to this court, asking whether public defenders could represent "death row inmates" in federal habeas corpus proceedings if the federal government reimbursed the defenders' office under the provisions of the Criminal Justice Act of 1964, 18 U.S.C. § 3006A. We accepted jurisdiction and now answer in the affirmative.

## DISCUSSION

### A. Standing

We have previously considered the question of standing in *State v. Evans*, 129 Ariz. 153, 629 P.2d 989 (1981). In that case, the attorney general and two county attorneys filed motions in superior court to prevent county public defenders from representing death row inmates in federal habeas corpus proceedings. The defendants contended, *inter alia*, that the prosecutors had no standing to challenge who would represent them. *Evans* held that the superior court had no jurisdiction to act on the motions. 129 Ariz. at 154, 629 P.2d at 990. Further, the majority, relying on *Knapp v. Hardy*, 111 Ariz. 107, 523 P.2d 1308 (1974), stated that it was "very doubtful that the prosecutors had any standing to question the representation of the defendants." *Id.* Only Chief Justice Struckmeyer, in a separate concurrence, concluded that the prosecutors did have standing.

In the case now before us, Smith also raises the standing issue. In response, the attorney general relies on Chief Justice Struckmeyer's view that the attorney general had standing because A.R.S. § 41-193(A)(3) required him to "represent the state in any action in a federal court." 129 Ariz. at 155, 629 P.2d at 991.

The so-called standing issue presents a difficult question. Undeniably, counsel has the authority and the obligation to object to the appearance of opposing counsel under some circumstances—for instance, when opposing counsel appears without consent of the client or in the face of a patent conflict of interest. On the other hand, a prosecutor's status *qua* prosecutor does not grant authority to designate who will represent defendants. Allowing prosecutors to dictate the selection of defense counsel would undermine public confidence in our system of justice by creating an inescapable appearance of impropriety. It is in that context, we believe, that the majority of this court stated in *Evans* that the prosecutors had no authority "to question the representation of the defendants." *Evans*, 129 Ariz. at 154, 629 P.2d at 990.

We do not believe, however, that this case requires us to consider whether prosecutors may question, in federal court, a state public defender's right to appear for the defendant.[2] We adhere to our previous statement that it is the county board of supervisors which is "the body charged with establishing, employing and paying the public defender, and therefore appears to be the more appropriate party to complain of actions by the public defender which might be in excess of his authority." *Id.*

Whatever may be the scope of "standing" for prosecutors in this area, we believe that a federal judge may certainly inquire about the state public defender's power under state law to accept a federal appointment to represent a state defendant in federal habeas corpus proceedings. That is the question before us, and it is the one to which we turn.

---

1. The Pima County Attorney's office, which evidently raised an objection in federal court, neither filed a brief in this court nor appeared at argument. At the time this court accepted the certified question, we took steps to see that notice of the proceedings reached the Pima County Board of Supervisors. That board has neither moved to intervene nor filed a request to appear as amicus curiae. *See* Rule 16, Ariz. R.Civ.App.P., 17A A.R.S.

2. We are not called upon in this case to consider under what circumstances a county board of supervisors might legitimately prohibit a public defender from complying with a district judge's habeas corpus appointment. Nor are we required to determine to what extent the county attorney or attorney general may affect the relationship between the public defender's office and the board of supervisors.

**B. Power of the State Public Defender to Appear in Federal Court**

 The question is whether state public defenders "may appear" in federal court when appointed by the district judge, not whether they *must* appear in all cases as a routine matter. The relevant statutes permit the public defender to assist in the defense of persons accused of crime only "as provided in this article." A.R.S. § 11–583(B). The applicable statutes also provide in pertinent part that:

A. The public defender *shall perform* the following duties:

1. *Upon order of the court, defend,* advise and counsel ... any person who is not financially able to employ counsel in the following proceedings:

(a) *Offenses triable in the superior,* municipal or justice *courts at all stages of the proceedings* ...

A.R.S. § 11–584(A)(1)(a) (emphasis added).

In *Evans,* Justice Gordon disagreed with any assertion by the court that public defenders could not represent indigent defendants in the federal court system. 129 Ariz. at 155, 629 P.2d at 991 (Gordon, J. and Cameron, J., concurring). He stated that such a "rule ... may cause unjust results and a lack of judicial economy."

He elaborated as follows:

Although this court's opinion finds nothing in A.R.S. § 11–584 to allow public defenders to represent Arizona defendants in federal courts, I do not find anything in that section or any other law in Arizona which would *preclude* public defenders from doing so. *Perhaps this court is worried about taxpayers' funds being used to pay lawyers to represent indigent defendants in federal courts.* This concern does not have its source in the. wording of A.R.S. § 11–584 or any supporting statute. It is possible that this problem may even be avoided if continued representation were allowed.

129 Ariz. at 155, 629 P.2d at 991 (first emphasis in original).

Circumstances have changed since *Evans.* At that time no provision existed for the federal government to pay state public defenders for services rendered in federal court. The federal court now operates under the following rule:

**Appointment of Counsel in Death Penalty Cases.**

In the event that counsel is appointed for a person who has been sentenced to death by a state court and is seeking relief pursuant to 28 U.S.C. § 2254, *the judicial officer may appoint and compensate under the Criminal Justice Act an attorney furnished by a state or local public defender organization ... to represent the person.* Such appointments may be in place of, or in addition to, the appointment of a federal defender organization or [other attorneys recognized under the CJA guidelines]. Such appointment should be made when the court determines that they will provide the most effective representation. In making this determination, the court should take into consideration whether the attorney represented the person during prior state court proceedings.

JUDICIAL CONFERENCE OF THE UNITED STATES, 7 GUIDE TO JUDICIARY POLICY AND PROCEDURES § A "Guidelines for the Administration of the Criminal Justice Act," ch. 2, § 2, ¶ 2.14(B) (1987) (emphasis added) (hereafter CJA Guidelines).

We believe that the federal court's new authority to appoint and compensate local public defenders dispells the concerns that engendered the earlier restrictive view. Although the legislature may not have contemplated the use of public defenders in federal court at state expense, we find no statutory or policy impediment to public defenders' representing capital defendants at federal cost. The statute provides that a court may order defenders to appear for indigent defendants in cases involving "offenses triable in the superior ... courts at all stages of the proceedings...." A.R.S. § 11–584(A)(1)(a). Thus, the law requires only that a court order the appearance and the matter to be heard involves an offense of a type "triable" in superior court, not that the specific matter actually be heard there. Nor does the statute limit the public defenders' appearance to trial proceedings,

appeal proceedings, or state habeas corpus proceedings. It contemplates that such appearances may be made by the defender "at any stage of the proceedings." The statute thus lends itself to the interpretation urged by the inmates rather than that by the attorney general.

Moreover, a system allowing defenders to appear in some federal proceedings would do much good and no harm. First, the public fisc would not suffer. Next, efficiency would be promoted. Presumably, the defender appointed in the habeas corpus action will know the client, the facts and the procedural history of the case. Finding a new lawyer and bringing him or her up to a level of even marginally adequate representation would often be quite inefficient. Both state and defendant benefit from prompt, prepared and effective representation.

We also believe that a rule fostering continuing representation furthers the spirit and goals of professional and competent legal service to society and individual clients. *See generally* Annotation, *Construction and Effect of Statutes Providing for Office of Public Defender,* 36 A.L. R.3d 1403 (1971). *See also* ER 1.16(b), Rule 42, Ariz.R.S.Ct., 17A A.R.S. (limiting the grounds on which a lawyer can withdraw from representation of a client). Often, counsel and defendant will have forged a relationship of mutual trust and confidence. *See Evans,* 129 Ariz. at 156, 629 P.2d at 992 (Gordon, J. and Cameron, J., concurring). "[I]t would be fairer ... to allow defendant's present counsel to continue in federal representation [just] as the state's counsel is allowed to." *Id.*

Finally, death penalty cases present unique ethical, pragmatic and constitutional problems. *Beck v. Alabama,* 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980); *Lockett v. Ohio,* 438 U.S. 586, 603–05, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978). They also demand careful judicial scrutiny to ensure constitutional compliance. The "Great Writ"—habeas corpus —is the "machinery by which the [federal] constitution is enforced on a daily basis" in the courts. Yackle, *The Exhaustion Doc-trine in Federal Habeas Corpus: An Argument for a Return to First Principles,* 44 OHIO ST. L.J. 393, 397 (1983). Both the condemned person and society require effective representation in federal habeas corpus proceedings, because they usually constitute the final stage of judicial review before the state takes a person's life. We must ensure that all legitimate constitutional issues are properly resolved there, because there will be no second chance.

The public defender will often be the lawyer who can best guarantee that all these goals are fulfilled. We recognize that there are cases when a defendant's allegations of ineffective trial or appellate representation by the public defender will make it impossible for that office to continue with the case. In other cases, the public defenders may have nothing to contribute that cannot be obtained through the federal defender system. We are confident that district court judges will appoint state public defenders only when it is "determine[d] that they will provide the most effective representation." CJA Guidelines.

We therefore conclude that a state public defender may provide representation for a defendant in federal court if ordered to do so by the district judge, so long as the federal government reimburses the county. In performing such services, public defenders fulfill their professional and statutory obligations. They neither violate the laws creating their office nor exceed their rightful powers. Any objections to the scope or method of such actions by the public defender must come from the board of supervisors which created the office.

We answer the certified question in the affirmative.

GORDON, C.J., and CAMERON and MOELLER, JJ., concur.

HOLOHAN, Justice, dissenting.

Seven years ago, this court in *State v. Evans,* 129 Ariz. 153, 629 P.2d 989 (1981), held that the statute A.R.S. § 11–584(A)(1) was designed to provide representation for indigents in the state court system, and the statute did not authorize public defenders

to represent indigent defendants in the federal court system. After our decision in *Evans* the legislature did not act to amend the statute to provide that public defenders might represent indigent defendants in the federal court system. Under the generally accepted principles of statutory construction we presume that the legislature was aware of existing case law and when it retains the language upon which the decision was based, it approves that interpretation. *State v. Pennington,* 149 Ariz. 167, 717 P.2d 471 (App.1985). In the intervening seven years A.R.S. § 11–584(A)(1) was amended in 1985 to add an additional responsibility for public defenders to represent indigent persons in sanity hearings. A.R.S. § 11–584(A)(1)(c). The legislature has not changed the statute since the 1985 amendment. I must conclude that the legislature approved this court's decision in *Evans.*

The court now feels that the possibility of payment for defense services by the federal government has changed the interpretation to be placed on A.R.S. § 11–584(A)(1). Just how a change in federal policy can change a state statute without legislative action is not explained. Justice Gordon, writing for the dissent in *Evans,* expressed the notion that the court was concerned about taxpayers' funds being used to pay lawyers to represent indigent defendants in federal courts, but that was a minority position which was not adopted by the majority.

The majority in *Evans* relied on the plain language of § 11–584(A)(1) to conclude that the statute was designed to provide a defender organization to represent defendants in the state court system. The statute was not designed to provide representation of indigents in every situation. As pointed out in *Evans,* it was expected that the federal system would provide its own means for supplying representation for indigents in its courts. The state is not required by the Constitution to provide attorneys for representation of indigents in discretionary appeals or habeas corpus proceedings in the federal courts. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974).

The possibility of payment to public defenders by the federal government raises the problem of dual compensation under state law. A.R.S. § 38–601 forbids the acceptance of any additional salary or emolument in excess of the salary provided by law for county employees. Members of the public defender's staff are county employees, and it would be unlawful for them to accept additional compensation from the federal government.

The court asserts that continuing the representation by the public defenders advances worthy goals. The court feels that counsel and defendant will undoubtedly have forged a relationship of mutual trust and confidence. It is useful to note that the petitioner Smith has had to establish that relationship with at least three members of the public defender's staff. The attorney that represented him at trial and the attorney who represented him on appeal are no longer with the office. Smith at the time of oral argument was being represented by the third attorney from the public defender's staff. Nor is the Smith scenario unusual in the real world, and the presence of federal money will not change the realities of representation by the attorneys in the public defender offices. On the other hand, the appointment of new counsel in the federal court could provide a state defendant with a fresh review of the case.

All of these considerations, of course, do not change the real issue, which is whether our statute authorizes the public defender to represent indigents in the federal court. *Evans* answered the question in the negative.

The court has failed to address the problems that will be caused by extending legal representation into the federal courts. For the last several years this court has continually faced the problems of the increasing workload of public defender offices in both Maricopa and Pima Counties. These offices are constantly seeking extensions of time to file briefs in the appellate courts. The members of the public defender's staff

**516**

of Maricopa County have actually sought relief from the superior court to lessen the number of new assignments because of their existing caseloads.

In light of the existing caseloads, it seems rather hollow to extol the advantages of the public defender following a case through the state and federal court system, if in fact one attorney did so.

Additionally, it strains reality to argue that a defendant, who has been sentenced to death, represented by counsel who has lost the case through every avenue of the state court system, can be said to have an overriding confidence in that counsel so that it would result in injustice for a new counsel to take over the case in the federal system.

There is nothing changed since *State v. Evans* which indicates a legal reason to change the interpretation placed by the court originally on A.R.S. § 11–584(A)(1). The only difference is that there has been a change in the membership of the court. If this is the significant difference, whatever happened to *stare decisis?*